**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JANE DOE                                  ) | |
|                             Plaintiff,    ) | |
| v.                                                 ) | |
| THE OFFICE OF REPRESENTATIVE ) | Case No. 1:19-cv-00085 (DLF) |
| SHEILA JACKSON LEE                 ) | |
|   2079 Rayburn House Office Bldg ) | |
|   Washington, D.C. 20515           ) | |
| and                                             ) | |
| CONGRESSIONAL BLACK        ) | |
| CAUCUS FOUNDATION          ) | |
|                          Defendants.   ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY THE OFFICE OF
<u>REPRESENTATIVE SHEILA JACKSON LEE</u>**

The Office of Representative Sheila Jackson Lee ("the Office"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7, and through undersigned counsel, hereby submits this memorandum in support of its motion to dismiss for failure to state a claim.

**I.      INTRODUCTORY STATEMENT**

This case is not about sexual assault against the Office of Representative Sheila Jackson Lee. It is not a criminal case and there are no allegations that anyone affiliated with the Office, including Representative Sheila Jackson Lee, was involved in or responsible for a sexual assault. Rather, this is essentially a straightforward employment law case. Representative Sheila Jackson Lee is not a party to this lawsuit.[1]

---

[1]     Under the Congressional Accountability Act ("CAA"), the defendant is "the personal office of a Member of the House of Representatives or of a Senator" – here the Office of

1

Despite this, the Complaint goes into great detail alleging that, more than two years prior to Plaintiff's employment with the Office, and while she was still a college student, Plaintiff was sexually assaulted by an employee of the Congressional Black Caucus Foundation ("CBCF") where she was an intern. The Complaint devotes five pages to an extremely detailed recitation of the alleged events of October 2015 (*e.g.*, quoting text messages exchanged; providing graphic details of the parts of the alleged sexual assault Plaintiff recalls; describing the medical evidence obtained, the police investigation that ensued, the results of the forensic investigation; and many other details). *See, e.g.,* Compl. ¶¶ 8-29. Representative Sheila Jackson Lee believes victims and survivors of sexual assault should be heard, should be encouraged to come forward, and should be supported. As she acknowledges, Plaintiff was given that support.[2]

Seeing such detailed sexual assault allegations populate five of the initial pages of a civil lawsuit, one would reasonably expect to see them followed by claims for liability based on the sexual assault itself, such as battery, *respondeat superior* liability-based claims, negligent supervision, and other similar torts. Those, after all, are the types of civil claims for which detailed allegations of this type would be relevant. However, not one of the four counts in the Complaint seeks to establish liability against either defendant based on the alleged October 2015 sexual assault.

---

Representative Sheila Jackson Lee. *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 5 (D.C. Cir. 2006).

[2]  *See* Compl. ¶¶ 22, 25, 27, 28, 29, 30, 61 (describing efforts in which Plaintiff was supported when she reported the alleged sexual assault, including through the assistance of a Sexual Assault Nurse, the District of Columbia Metropolitan Police Department (which obtained a search warrant to collect DNA from the CBCF employee) and treatment with both a trauma psychologist and a psychiatrist). This is the type of support for victims and survivors of sexual assault that Congresswoman Jackson Lee has long fought for and she appreciates that it was provided to Plaintiff. In any case, the Office has no knowledge of the specific circumstances of the alleged October 2015 sexual assault and, therefore, is not in a position to comment further.

2

The October 2015 alleged sexual assault is not even at issue here.

The claim against the Office boils down to this:

- Plaintiff allegedly told the Office's Chief of Staff that she had a "prior situation" with an employee of the CBCF and she "planned to move forward with legal action" against the CBCF.  Compl. ¶¶ 38, 53, 67.[3]

- The Complaint states that "[u]pon information and belief," the Chief of Staff thereafter allegedly told Congresswoman Jackson Lee that Plaintiff planned to "pursue claims" against the CBCF.  Compl. ¶ 67.

- Plaintiff was subsequently separated from the Office.  Compl. ¶ 66.[4]

Significantly, the following allegations are not in the Complaint:

- The Complaint does not allege that Plaintiff ever told the Chief of Staff, Representative Jackson Lee, or anyone else in the Office that she had been sexually assaulted.  *See, e.g.,* Compl. ¶¶ 38, 53.

- The Complaint does not allege that Plaintiff ever told the Chief of Staff, Representative Jackson Lee, or anyone else in the Office that she intended to bring *a CAA claim against* the CBCF or any other entity or person.  *See, e.g., id.*

- The Complaint does not allege that Plaintiff ever told the Chief of Staff, Representative Jackson Lee, or anyone else in the Office that she intended to bring a claim against the CBCF for *unlawful discrimination*.  *See, e.g., id.*

The vague words the Complaint alleges Plaintiff uttered to the Chief of Staff – "prior situation" and "legal action" – are telling, particularly when juxtaposed with the otherwise

---

[3]   The Complaint alternates between the term "legal action" and other similarly vague terms to describe what Plaintiff allegedly told the Chief of Staff in March 2018.  *See, e.g.,* Compl. ¶ 67 ("legal claims"), ¶ 68 ("file a lawsuit").

[4]   If this case proceeds, the evidence will show that Plaintiff's employment ended for legitimate reasons relating to an office restructure and accompanying budgetary considerations, as well as Plaintiff lying to the Office.  Compl. ¶ 57.  It will also show that Plaintiff's alleged statements about the CBCF had nothing to do with the Office's decision.  Indeed, the Office made a number of efforts to help Plaintiff secure alternative employment, including contacting other Congressional offices on her behalf, following up with them, and sending Plaintiff's resume to potential employers, similar to what it has done for other departing employees.  Those are not the actions of people who harbor retaliatory motives.

meticulous fact-heavy pleading that consumes nearly 20 pages of printed text spread out over 88 paragraphs, much of which purports to restate facts, conversations, and text messages in detail (often using quotation marks, *see, e.g.*, Compl. ¶¶ 13, 16, 18, 23, 27, 45, 47, 57).  As explained below, a blanket statement that someone intends to bring "legal action" against a former non-Congressional employer because of a "prior situation," is not protected activity under the CAA.  Accordingly, the claim against the Office fails and should be dismissed.

Unfortunately, the Complaint's sophistry creates extra-judicial harm that goes beyond what this Court can resolve by granting this motion.  The Complaint does not allege *a single factual allegation* to support the contention that *Representative Jackson Lee herself* was ever made aware of what Plaintiff allegedly communicated to the Chief of Staff.  Instead, through pleading sleight-of-hand, the Complaint asserts – based solely *"[u]pon information and belief"* – that the Chief of Staff told Representative Jackson Lee that Plaintiff intended to "pursue claims" against the CBCF.  Compl. ¶ 67.

This "information and belief" assertion that Representative Jackson Lee had knowledge of a vague reference to unstated legal claims has had substantial real-world consequences for Representative Jackson Lee.  And, it has unfairly impacted her well-earned reputation as someone who has devoted her life and career to advancing the rights of women, and victims and survivors of discrimination and sexual assault, and who has been at the forefront of fighting for vulnerable women who have experienced sexual assault, domestic violence, sexual harassment, and the like.  It is regrettable that simply pleading the unsubstantiated words "information and belief" can cause such unwarranted harm.[5]

---

[5]   Such "fact-less" pleading speculation has been rejected in similar CAA cases.  For example, in *Ey v. Office of Chief Admin. Officer of U.S. House of Representatives,* 967 F. Supp. 2d 337, 347 (D.D.C. 2013), the complaint alleged that a manager "somehow ⸺lobbied‖" another

If this case is dismissed, as we argue below it should be, that will put an end to Plaintiff's *legal* battle against the Office; but, it will not correct the harm that this unsupported "information and belief" allegation has done to the reputation of a dedicated public servant who has fought for decades for the rights of women and the vulnerable.

## II.    FACTUAL BACKGROUND

The Office will not repeat all of the allegations in the Complaint here.  However, as a preliminary matter, the Office *vigorously* disputes a number of the factual assertions in the Complaint, including, for example, the exaggerated allegations regarding Plaintiff's role and duties in the Office, as well as the description of the circumstances leading to Plaintiff's departure from the Office.  Moreover, after Plaintiff's separation, the Office learned that Plaintiff had apparently surreptitiously and without authorization accessed a text message on the Congresswoman's personal cell phone.  Somewhat surprisingly, the Complaint explicitly concedes that, at the time, Plaintiff *lied* about how she had gained the information contained in a text message sent personally to the Congresswoman — in order "to avoid the appearance that she was reading messages on Representative Jackson Lee's phone." Compl. ¶ 47.

Such after-acquired evidence suggests that Plaintiff engaged in improper — and possibly unlawful — conduct during her employment with the Office. *See, e.g., Castle v. Rubin,* 78 F.3d 654, 657 (D.C. Cir. 1996) ("a district court may deny reinstatement, front pay, and full back pay based on after-acquired evidence of employee misconduct"); *see also Maremont v. Susan Fredman Design Grp., Ltd.,* No. 10 C 7811, 2014 WL 812401, at *2, 6 (N.D. Ill. Mar. 3, 2014)

---

manager to terminate his employment.  Dismissing the complaint on a Rule 12(b)(6) motion, the court stated that "plaintiff does not allege that he saw this 'lobbying' or even heard from others about such 'lobbying'. . . [and therefore t]he Court does not have to accept conclusory allegations as true facts merely because they are plead as such." *Id.*

(intern claimed she had been given access to spreadsheet containing employee's passwords; court concluded there was a question of fact as to whether employee's electronic accounts were improperly accessed, and noted that the Stored Communications Act "provides a private cause of action for unauthorized, intentional access to communications held in electronic storage"). Regardless of whether Plaintiff's conduct was unlawful, it violated Office policies and betrayed the Congresswoman's trust – which would have resulted in the end of Plaintiff's employment. The Complaint shows that Plaintiff herself was well aware at the time that her actions would, at the very least, appear improper to third parties.[6]

In evaluating a motion to dismiss under Rule 12(b)(6), the Court is required to view as true the facts alleged in the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wigfall v. Office of Compliance,* 332 F. Supp. 3d 159, 167 (D.D.C. 2018). The factual allegations in the Complaint that are relevant to this motion are listed below. *Although the Office vehemently disagrees with several of these assertions*, for purposes of this motion, the Office is required to assume they are true.

1. The CBCF is a nonprofit corporation. Compl. ¶ 7.

2. Plaintiff was an intern at the CBCF in the Fall of 2015. *Id.* ¶ 2.

3. The Office is a Congressional employing office under the CAA. *Id.* ¶ 6; 2 U.S.C. § 1301(a)(9)(A).

4. On her first day of employment with the Office, in November 2017, Plaintiff alleges that she learned that a former CBCF employee "expressed an interest in a job with" the Office. Compl. ¶¶ 37, 66.

---

[6] The admission in paragraph 47 that Plaintiff was intentionally untruthful about how she came into possession of the information contained in the text message should operate as a binding admission in this litigation that Plaintiff has demonstrated a willingness to not tell the truth when it suits her purposes.

6

5. Plaintiff allegedly told the Office's Chief of Staff that she had a "prior situation" with the former CBCF employee and that she "was not comfortable working with him." *Id.* ¶ 38.

6. The Chief of Staff allegedly "responded that he understood, and that he decided not to hire" the former CBCF employee. *Id.*

7. Plaintiff's employment did not end after she allegedly said this to the Chief of Staff in November 2017. *Id.* ¶ 66.

8. More than four months later, on March 9, 2018, Plaintiff allegedly told the Chief of Staff "that she recently learned more about her case involving [the CBCF employee] and CBCF, and planned to move forward with legal action." *Id.* ¶ 53.

9. During the March 9, 2018, conversation, Plaintiff claims that the Chief of Staff said he understood, and that he supported her because his daughter had been in a similar situation and chose not to move forward. *Id.*[7]

10. On March 29, 2018, the Chief of Staff told Plaintiff that her employment with the Office was ending. *Id.* ¶¶ 57.

### III. ARGUMENT

    A. <u>Legal Standard</u>

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that, to withstand a motion to dismiss under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. This requires the plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In renouncing the "no set of facts" test of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), the Court underscored that Federal Rule of Civil Procedure 8 "requires a '-showing,' rather than a blanket

---

[7] *If* this allegation is intended to convey that the Chief of Staff's daughter had been the victim or survivor of a sexual assault, then the public version of the Complaint should not have identified the Chief of Staff by name, and this particular allegation should have been placed under seal in the same manner that Plaintiff, through counsel, was diligent in protecting her own privacy. The Chief of Staff's daughter has the same privacy interests that Plaintiff does. For this reason, we do not believe it is appropriate to identify the Chief of Staff by name, and we respectfully request that the Court not do so either in any opinion.

assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3. When the facts alleged by a plaintiff "have not nudged the[] claims across the line from conceivable to plausible," the complaint should be dismissed. *Id.* at 570.

In *Iqbal*, the Supreme Court further emphasized that this plausibility standard of pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. As the Court explained, "Rule 8 marks a notable and generous departure from the hyper technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Rather, to state a claim with the required "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A complaint that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not meet this standard, and a court need not accept such allegations as true. *Id.* (internal quotations omitted); *see also Wigfall*, 332 F. Supp. 2d at 167. A court also need not accept as true "a legal conclusion couched as a factual allegation" or "naked assertion[s of unlawful misconduct] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and textual alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged* — but it has not '*show[n]*' '*that* the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (emphasis added).

### B. Plaintiff Has Not Alleged Facts to Show That She Engaged in Protected Activity Under the CAA.

The CAA does not adopt Title VII wholesale; rather, it "incorporates portions of" Title VII (and other employment laws) and makes the incorporated portions applicable to

Congressional employers. *Fields*, 459 F.3d at 4-5 n. 2; *Wigfall*, 332 F. Supp. 3d at 163 n.1 (CAA "incorporates by reference *certain provisions* of Title VII") (emphasis added).

One of the provisions of Title VII that the CAA does not incorporate is Title VII's anti-retaliation provision (located at 42 U.S.C. § 2000e-3). Rather, the CAA's anti-reprisal provision states:

> It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful *by this chapter*, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding *under this chapter*.

2 U.S.C. § 1317(a) (emphasis added).[8]

The CAA anti-reprisal provision is similar in operation to Title VII's anti-retaliation provision, and courts analyzing CAA retaliation claims generally employ the same analytical paradigm as they do when evaluating Title VII retaliation claims. *Fields*, 459 F.3d at 15 n. 24 (noting that *McDonnell Douglas* analytical framework "presumably applies" to CAA retaliation claims). This means that, to state a retaliation claim, a plaintiff must allege "that she engaged in protected activity, that her employer took an adverse action, and that there is a causal nexus between the protected activity and the adverse action." *Scott v. Office of Alexander,* 522 F. Supp. 2d 262, 270 (D.D.C. 2007). Additionally, the plaintiff must allege that her opposition to the protected activity was the but-for reason for the adverse action. *Univ. Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). The existence of other reasons negates the claim. *Morales v. Gotbaum*, 42 F. Supp. 3d 175, 199-200 (D.D.C. 2014).

---

[8]   The Complaint cites 2 U.S.C. § 1311(a)(1) as the statutory basis for Plaintiff's retaliation claim against the Office. Compl. ¶ 67. However, § 1311(a)(1) is the part of the CAA that incorporates the *substantive anti-discrimination* prohibitions of Title VII. *See* 2 U.S.C. § 1311(a)(1) (incorporating 42 U.S.C. § 2000e-2). The Title VII *anti-retaliation* provision – located at 42 U.S.C. § 2000e-3 – is *not* incorporated by 2 U.S.C. § 1311(a)(1).

The "protected activity" prong is the only part of the above analysis that is relevant to this motion. Protected activity under the CAA occurs when a covered employee "has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this chapter" (the "participation clause") and/or "'opposed' or reported any practice made unlawful' by the Accountability Act" (the "opposition clause"). *Fields,* 459 F.3d at 5; *Brady v. U.S. Capitol Police,* 200 F. Supp. 3d 208, 213 (D.D.C. 2016).

What constitutes protected activity under the CAA is thus limited by an important qualification: for participation clause claims, the proceedings initiated must be "under this chapter" and for opposition clause claims, the practice opposed must be "made unlawful by this chapter." *Brady,* 200 F. Supp. 3d at 213. "This chapter" refers to the CAA. *See Fields,* 459 F.3d at 5 ("by the Accountability Act"). Because the CBCF is not a Member's "personal office" – nor is it any other covered employer under the CAA – it cannot violate the CAA, nor can it be sued under the CAA.

Therefore, because it is impossible to initiate proceedings against the CBCF at the Office of Compliance, Plaintiff's alleged statement to the Chief of Staff cannot be protected activity under the CAA's participation clause. *See Brady*, 200 F. Supp. 3d at 216 ("[w]here, as here, the CAA applies, not Title VII, protection under the participation clause only extends to complaints made to the Office of Compliance ['OOC'], which is the body that receives and responds to employment claims under the CAA").[9] Similarly, if Plaintiff's allegations are analyzed under the

---

[9] The Office of Compliance was renamed as the Office of Congressional Workplace Rights pursuant to Section 308 of the Congressional Accountability Act of 1995 Reform Act. Pub. L. No. 115-397, 132 Stat 5297, 5325–5327 (Dec. 21, 2018). Although this law made several substantive and procedural changes to the CAA, no changes were made to the CAA's anti-reprisal provision at 2 U.S.C. § 1317.

CAA's opposition clause, the same rationale applies: because the CBCF cannot violate the CAA, stating that one intends to bring legal action against the CBCF (presumably because one believes the CBCF has engaged in wrongful conduct) cannot, *a fortiori,* be opposition to conduct *made unlawful by the CAA*.

That the CAA limits its retaliation prohibition protections to claims under the CAA is not unusual. Typically, a statute's anti-retaliation prohibition applies only when the underlying activity opposed is a violation of that same statute. *See, e.g., Reynolds v. Am. Nat'l Red Cross,* 701 F.3d 143, 154 (4th Cir. 2012). In that case, the plaintiff alleged he was retaliated against under the ADA for "mentioning that he wanted to file a workers' compensation claim." *Id.* at 154. The court rejected the ADA retaliation claim, explaining that the phrase "opposed any act or practice made unlawful *by this chapter*" under ADA means opposition must be to conduct made unlawful by the ADA, not some other law, and finding that "[f]iling a workers' compensation claim is not something that is covered by the ADA." *Id.* (emphasis in original). "The ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

The same is true under Title VII. *See* EEOC Enforcement Guidance on Retaliation and Related Issues (August 25, 2016), available at https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm, at 4, n.12. ("Where it appears that an allegation of retaliation raised in an EEOC charge may be *solely* subject to the jurisdiction of another federal agency or a state or local government, rather than EEOC, the charging party should be referred promptly to the appropriate agency. For example, claims of retaliation for union activity should be referred to the National

11

Labor Relations Board. Similarly, claims of retaliation for raising violations of federal wage and hour laws, such as reprisal for raising timekeeping violations, or withholding of overtime pay, should be referred to the Department of Labor, Wage and Hour Division.")

No one doubts that the discrimination prohibited by the CAA is similar to the discrimination prohibited by the laws it incorporates (*e.g.*, Title VII).[10] *However*, in order for the CAA's anti-reprisal provision to even potentially apply here, the statute would need to *be amended* to cover an employee that "opposed any practice made unlawful by this chapter, *or made unlawful by laws incorporated by this chapter*." The Court has no power to judicially amend the statute to achieve that goal. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon [of statutory interpretation] is also the last: judicial inquiry is complete.") (internal quotations and citations omitted).

This principle applies with particular force here, where the statute at issue involves a waiver of sovereign immunity. As courts have made clear, "[w]here Congressional legislation, such as the CAA, has waived the United States' sovereign immunity, any claims brought pursuant to that legislation must adhere to the terms that condition such a waiver." *Halcomb v.*

---

[10]  Similar does not mean identical, however. There are some substantive differences between Title VII (and its analogues) and the CAA, and these differences further counsel against reading the two statutes as coterminous in every respect. For instance, under the CAA, certain Congressional offices may consider party affiliation, domicile and political compatibility in making employment decisions. 2 U.S.C. § 1432. The exemption in Title VII is far more limited. *See* 42 U.S.C. § 2000e-2(f) (not unlawful to discriminate based on Communist party membership). Thus, if an employee of a Member office "opposed" an action by that office to separate an employee based on the fact that an employee is (or is not) affiliated with the Democratic or Republican party, such opposition would not be covered under the CAA's anti-reprisal provision. Different principles would apply under Title VII. And, under the D.C. Human Rights Act, the CBCF is expressly prohibited from discriminating on the basis of political affiliation. D.C. Code § 2-1402.11(a). Accordingly, a CBCF employee *would be* engaged in protected activity under the D.C. Human Rights Act if she opposed termination based on political affiliation. Exactly the opposite is true under the CAA.

*Office of the Senate Sergeant-at-Arms of U.S. Senate*, 209 F. Supp. 2d 175, 179 (D.D.C. 2002), *aff'd*, 368 F. App'x 150 (D.C. Cir. 2010). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (quotations and citations omitted).

Because Plaintiff's alleged statement to the Chief of Staff was not protected activity *under the CAA*, Plaintiff's effort to sue the Office for reprisal under the CAA must fail.[11]

C. The Substance of Plaintiff's Alleged Statement to the Chief of Staff Was Not Sufficient to Constitute Protected Activity.

Assuming arguendo that the Court reads the CAA's anti-reprisal provision more broadly and concludes that it does cover opposition to conduct against a non-Congressional employer for conduct made unlawful under a statute other than the CAA, Plaintiff's claim against the Office must nonetheless be dismissed. That is because in order to constitute protected activity with respect to Title VII, an employee must "oppose" "unlawful discrimination." *Touvian v. District of Columbia*, 330 F. Supp. 2d 246, 251 (D.D.C. 2018); *Wigfall*, 332 F. Supp.3d 159, 174 (D.D.C.

---

[11] Count I also cryptically alleges that "[t]he CBCF and the Office of Representative Jackson Lee conspired to retaliate against Ms. Doe because she threatened to file a lawsuit against the CBCF." Compl. ¶ 68. The CAA is the exclusive remedy for employment claims brought against Congressional offices. *Packer v. U.S. Comm'n on Sec. and Cooperation in Europe,* 843 F. Supp. 2d 44, 47-48 (D.D.C. 2012). This allegation suggests that the retaliation claim against the Office is really an effort to shoe-horn a civil conspiracy claim into the CAA in order to avoid the CAA's exclusivity. This effort should be rejected. Additionally, this allegation is also a pure legal conclusion without *any factual support* in the Complaint. Indeed, the Complaint points to the exact opposite conclusion: Plaintiff alleges she wanted to speak to Representative Jackson Lee about this matter, but the Chief of Staff "did not arrange" a meeting, and, despite Plaintiff's own efforts, she was never able to have such a meeting. Compl. ¶¶ 53, 54. Accordingly, the legal conclusion that Representative Jackson Lee knew that Plaintiff had apparently decided to pursue legal claims against the CBCF – and that she allegedly conspired with the CBCF based on the possession of that knowledge – is pure conjecture, contradicted by the factual allegations of the Complaint, and is entitled to no deference whatsoever. *Ey,* 967 F. Supp. 2d at 347-48.

2018) *citing Broderick v. Donaldson,* 437 F.3d 1226, 1232 (D.C. Cir. 2006). "[G]laringly absent from the plaintiff's complaint is any allegation that she communicated discriminatory conduct *based on a protected class*" when she allegedly told the Chief of Staff she intended to pursue legal action against the CBCF. *Brady,* 200 F. Supp. 3d at 214 (D.D.C. 2016) (emphasis in original); *see also Moore v. Office of the Architect of the Capitol*, 828 F. Supp. 2d 254, 257 (D.D.C. 2011) (to state a CAA retaliation claim, a "plaintiff is required *to communicate* to his employer that he believes the employer's conduct is, in fact, discriminatory") (emphasis in original).

As noted above, the Complaint alleges that Plaintiff told the Chief of Staff that she had a "prior situation" with the CBCF employee, that she had recently "learned more about her case involving [the CBCF employee] and CBCF," and that she intended to "move forward with legal action against the CBCF." Compl. ¶¶ 38, 53. *These statements do not show that Plaintiff either "opposed" anything, or that she "allege[d] unlawful discrimination."*

Plaintiff may argue that her alleged statement that she had a "prior situation" with the CBCF employee is enough to get over the plausibility line to survive this motion to dismiss. Such an argument should be rejected because a "prior situation" might mean any number of things. The simple reality is that the Complaint does not contain any indication that Plaintiff was more specific with the Chief of Staff about what this "prior situation" was: a flimsy reed upon which to base a federal lawsuit.[12]

---

[12] Despite asserting in the first 16 pages of the Complaint that Plaintiff allegedly described her issue with the CBCF employee as a "prior situation," at page 17, Plaintiff instead uses the word "incident" in describing her statement to the Chief of Staff. Compl. ¶ 73. Either this is a drafting error or Plaintiff herself is confused about what she said to the Chief of Staff. In any case, regardless of whether "situation" or "incident" were the words allegedly used, what is clear is that the words "sexual assault" were not.

Plaintiff may also argue that the Chief of Staff knew the "prior situation" involved a sexual assault because the Chief of Staff allegedly stated to Plaintiff that he "understood" what Plaintiff meant because of a situation he had with a family member. That would be a boot-strapping argument, at best. However, regardless of whether the Chief of Staff was aware that Plaintiff had been the victim of an alleged sexual assault, the statement Plaintiff allegedly made to the Chief of Staff about "moving forward with legal action" does not allege that she advised him that her legal action would be based on "unlawful discrimination."

Indeed, that statement could mean many things.

- It could mean that Plaintiff intended to sue the CBCF for **battery**. *See, e.g., Evans v. Washington Ctr. for Internships & Acad. Seminars*, 587 F. Supp. 2d 148 (D.D.C. 2008) (intern sued internship organization and other defendants for alleged battery committed by employee).

- It could mean that Plaintiff intended to sue the CBCF based on any alleged **failure to conduct a criminal background check** on the CBCF employee, or related theories. *See, cf., L.L. v. Chimes District of Columbia Inc., et al.*, Case No. 99-cv-03277 (JR), ECF No. 31 (D.D.C. Sept. 18, 2000) (claims based on failure to disclose/concealment of criminal record of employee who raped co-worker).

- It could mean Plaintiff intended to pursue a claim based on failure to **provide a safe working environment** and/or a chaperone when the CBCF employee and Plaintiff went out for drinks the night of the alleged sexual assault. *See, e.g., L.L. v. Chimes,* 142 F. Supp. 2d 52 (D.D.C. 2001) (claim based on liability of owner of property where rape of coworker occurred).

- It could mean Plaintiff intended to file an assault or battery claim and hold CBCF liable under a theory of **respondeat superior**. *See, e.g., Doe v. Sipper,* 821 F. Supp. 2d 384 (D.D.C. 2011) (involving alleged sexual assault by Chief Operating Officer).

- It could mean Plaintiff intended to sue CBCF for **intentional infliction of emotional distress** because it did not act to prevent the alleged sexual assault, or because of some unspecified actions it did or did not take after Plaintiff claimed she had been sexually assaulted. *See, e.g., Rauh v. Coyne*, 744 F. Supp. 1186 (D.D.C. 1990) (involving alleged sexual assault by supervisor).

- Or, Plaintiff's statement to the Chief of Staff could mean she intended to pursue claims for **constructive discharge, negligent supervision, negligent infliction of**

15

> ***emotional distress, negligent hiring, and/or breach of contract*** based on the alleged sexual assault and its effects upon her. *See, e.g., Rollerson v. Dart Grp. Corp.,* No. CIV. A. 95-1172 (GK), 1996 WL 365406, at *1 (D.D.C. June 25, 1996) (involving employee's claim that supervisor "rubbed his body against hers two different times").

None of these are claims for "unlawful discrimination." The fact that Plaintiff's cryptic comment to the Chief of Staff could refer to any – or none – of these claims demonstrates that the Complaint has failed to allege facts showing that Plaintiff engaged in protected activity under the CAA. *Brady*, 200 F. Supp. 3d at 215 (making general allegations of harassment to the employer is insufficient to constitute protected activity under the CAA); *see also Dyer v. McCormick & Schmick's Seafood Restaurants, Inc.,* 264 F. Supp. 3d 208, 238 (D.D.C. 2017). Indeed, what the Complaint says Plaintiff stated to the Chief of Staff is simply not enough to overcome "the self-evident rule that '[a]n employer cannot retaliate against an employee unless the employer has knowledge of the protected activity." *Id.* at 239 (internal citations omitted). Because a "plaintiff must provide more than just a sheer possibility that a defendant has acted unlawfully," *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz,* 793 F. Supp. 2d 311, 321 (D.D.C. 2011) (internal citations omitted), and Count I of the Complaint does not do so, it should be dismissed. Plaintiff simply does not have the keys that would entitle her to "unlock the doors of discovery." *Iqbal* at 678-79.

Finally, as of today, March 15, 2019, we still do not know what the basis is of the "legal action" against the CBCF that Plaintiff allegedly spoke of a year ago. That's because the *only* legal action she has actually filed against the CBCF (that we are aware of) is *this lawsuit*. And *this lawsuit* could not have been the lawsuit Plaintiff was talking about when she spoke to the Chief of Staff in early March 2018 for the simple reason that all of the claims against the CBCF in *this lawsuit* rely on Plaintiff's March 29, 2018 separation – conduct that occurred *after* Plaintiff allegedly stated she intended to pursue "legal action" against the CBCF. Compl. ¶¶ 76,

83, 87 (indicating that Plaintiff's March 29, 2018 separation from the Office is an element of all claims against the CBCF).

Perhaps, in the Opposition brief, Plaintiff will finally reveal the basis of the "legal action" she supposedly mentioned to the Chief of Staff. Regardless, that we still don't know the answer to that basic question further demonstrates why Plaintiff's current claim is meritless.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff fails to state a claim for reprisal the CAA and the lawsuit against the Office should be dismissed.

                        Respectfully submitted,

                        DEFENDANT OFFICE OF REPRESENTATIVE SHEILA JACKSON LEE

By: _____/s/_____
Russell H. Gore, D.C. Bar # 449231
Kimberly C. Williams, VA Bar #41325
Ann R. Rogers, D.C. Bar # 441622
U.S. House of Representatives
Office of House Employment Counsel
4300 O'Neill House Office Building
Washington, D.C. 20515
 (202) 225-7075
Russell.Gore@mail.house.gov
Kim.Williams@mail.house.gov
Ann.Rogers@mail.house.gov

Attorneys for Defendant Office of Representative Sheila Jackson Lee

Dated:    March 15, 2019