# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:19-cv-00085-DLF |
| | ) | |
| THE OFFICE OF REPRESENTATIVE | ) | |
| SHEILA JACKSON LEE, *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT CONGRESSIONAL BLACK CAUCUS FOUNDATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

John M. Remy (D.C. Bar No. 461244)
Tanzeela Ahmad (D.C. Bar No. 1048781)
**JACKSON LEWIS, P.C.**
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Tel.: (703) 483-8300
Fax: (703) 483-8301
John.Remy@jacksonlewis.com
Tanzeela.Ahmad@jacksonlewis.com

***Attorneys for Congressional Black Caucus Foundation***

## TABLE OF CONTENTS

I.     **INTRODUCTION** ........................................................................................... 1

II.    **STATEMENT OF FACTS** ............................................................................ 3

III.   **STANDARD OF REVIEW** .......................................................................... 5

IV.   **LEGAL ARGUMENT** ................................................................................. 6

    A.    **Plaintiff Has Not Stated a Claim of Retaliation Against CBCF Under the D.C. Human Rights Act** ................................................................... 6

        1.    Plaintiff has not pleaded facts showing that CBCF was responsible for the actions of the Office of Rep. Sheila Jackson Lee. ..................................... 7

            i.    *The Office of Rep. Sheila Jackson Lee and CBCF are not joint employers.* .................................................................................. 8

            ii.    *Rep. Jackson Lee is not an authorized agent of CBCF* ................. 10

            iii.   *Plaintiff did not engage in any protected activity while employed in the Office of Rep. Jackson Lee.* ..................................................... 11

        2.    Plaintiff's retaliation claim directly against CBCF is untimely and lacks adequate supporting factual allegations. ................................................. 12

            i.    *An evaluation of Plaintiff's retaliation claim against CBCF must consider only the allegations concerning CBCF's actions.* ........... 13

            ii.    *Plaintiff's retaliation claim against CBCF is untimely.* ............... 14

            iii.   *Plaintiff has not pleaded facts tending to show that CBCF took any materially adverse action against her.* ........................................... 15

            iv.   *Plaintiff has not pleaded facts tending to show a causal connection between her 2016 pursuit of claims against CBCF and the alleged adverse action by CBCF.* .............................................................. 17

    B.    **Plaintiff's Remaining Tort Claims Also Fail As a Matter of Law** ................ 19

        1.    Plaintiff's common law claims are subject to a one-year statute of limitations because they are inextricably intertwined with her DCHRA claim. ............................................................................................. 19

        2.    Plaintiff's common law claims should be dismissed because she has not pleaded adequate factual matter to support her claims. ........................... 20

        *i.*    *Plaintiff has not pleaded facts sufficient to plausibly establish a tortious interference claim.* .......................................................... 21

        *ii.*   *Plaintiff has not pleaded facts sufficient to plausibly establish an intentional infliction of emotional distress claim.* ......................... 23

**V.**    **CONCLUSION** ............................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Boulter*,
 842 F. Supp. 2d 85 (D.D.C. 2012) ............................................................................21

*Arenivar v. Manganaro Midatlantic, LLC*,
 317 F. Supp. 3d 362, 369 (D.D.C. 2018) ...................................................................8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................16, 19

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................5, 6

*Bennett Enters., Inc. v. Domino's Pizza, Inc.*,
 45 F.3d 493 (D.C. Cir. 1995) ....................................................................................22

*Beyene v. Hilton Hotels Corp.*,
 815 F. Supp. 2d 235 (D.D.C. 2011) ..........................................................................23

*Buggs v. Powell*,
 293 F. Supp. 2d 135 (D.D.C. 2003) ..........................................................................17

*Clayton v. District of Columbia*,
 117 F. Supp. 3d 68, 83 (D.D.C. 2015) ........................................................................9

*Coles v. Deltaville Boatyard, LLC*,
 Case No. 3:10-cv-491, 2011 U.S. Dist. LEXIS 14304 (E.D. Va. Feb. 14, 2011).............13, 18

*Coles v. Harvey*,
 471 F.Supp.2d 46 (D.D.C.2007) ..................................................................................9

*Dale v. Thomason*,
 962 F. Supp. 181 (D.D.C. 1997) ................................................................................23

*Delaware State Coll. v. Ricks*,
 449 U.S. 250 (1980) ...................................................................................................14

*Duncan v. Children's Nat'l Med. Ctr.*,
 702 A.2d 207 (D.C. 1997) ..........................................................................................23

*Duncan v. Mgr., Dep't of Safety*,
 397 F.3d 1300 (10th Cir. 2005) .................................................................................12

iii

*EEOC v. L.B. Foster Co.*,
123 F.3d 746 (3d Cir. 1997)........................................................................13

*Ellis v. Georgetown Univ. Hosp.*,
631 F. Supp. 2d 71 (D.D.C. 2009) ..............................................................14

*Evans v. District of Columbia*,
391 F. Supp. 2d 160 (D.D.C. 2005) ............................................................23

*George v. Leavitt*,
407 F.3d 405 (D.C. Cir. 2005) ....................................................................12

*Grimes v. District of Columbia*,
89A.3d 107 (D.C. 2014) ........................................................................24, 25

*Henderson v. Charles E. Smith Mgmt., Inc.*,
567 A.2d 59 (D.C. 1989) .............................................................................10

*Howard R.L. Cook & Tommy Shaw Found. for Black Empls. of the Lib. of Cong., Inc. v. Billington*,
737 F.3d 767 (D.C. Cir. 2013) ......................................................................6

*Judah v. Reiner*,
744 A.2d 1037 (D.C. 2000) ....................................................................10, 11

*Kerrigan v. Britches of Georgetowne, Inc.*,
705 A.2d 624 (D.C. 1997) ................................................................23, 24, 25

*Konah v. Dist. of Columbia*,
815 F. Supp. 2d 61 (D.D.C. 2011) ................................................................9

*Lane v. Vasquez*,
961 F. Supp. 2d 55 (D.D.C. 2013)...............................................................17

*Little v. Dist. of Columbia Water & Sewer Auth.*,
91 A.3d 1020 (D.C. 2014) ...........................................................................21

*Mack v. Aspen of DC, Inc.*,
248 F. Supp. 3d 215, 218-19 (D.D.C. 2017)..................................................9

*Martin v. District of Columbia*,
78 F. Supp. 3d 279, 315 (D.D.C. 2015) ........................................................6

*McGrath v. Clinton*,
666 F.3d 1377 (D.C. Cir. 2012) ....................................................................6

*McIntrye v. Peters*,
460 F. Supp. 2d 125 (D.D.C. 2006) ............................................................18

iv

*McManus v. MCI Communications Corporation*,
748 A.2d 949 (D.C. 2000) .........................................................................21

*Miles v. Howard Univ.*,
83 F. Supp. 3d 105, 113 (D.D.C. 2015) .....................................................8

*Miles v. Howard Univ.*,
Case No. 12-3782, 013 U.S. Dist. LEXIS 155236 (D.D.C. Oct. 30, 2013).............................9

*Munoz v. Bd. of Trustees of the Univ. of the Dist. of Columbia*,
590 F. Supp. 2d 21 (D.D.C. 2008) ...........................................................20

*Newmyer v. Sidwell Friends Sch.*,
128 A.3d 1023 (D.C. 2015) ......................................................................21

*Niedermeier v. Office of Max S. Baucus*,
153 F. Supp. 2d 23 (D.D.C. 2001) ...........................................................15

*NLRB v. Browning-Ferris Indus. of Pennsylvania, Inc.*,
691 F.2d 1117 (3d Cir.1982).............................................................8, 9, 10

*Nyambal v. AlliedBarton Sec. Servs., LLC*,
153 F. Supp. 3d 309, 314 (D.D.C. 2016) .............................................19, 20

*Payne v. Dist. of Columbia*,
722 F.3d 345 (D.C. Cir. 2013) ............................................................17, 18

*Spirides v. Reinhardt*,
613 F.2d 826 (D.C. Cir.1979).................................................................8, 9

*Williams v. District of Columbia*,
9 A.3d 484 (D.C. 2010) ......................................................................24, 25

*Williams v. Fed. Nat'l Mortg. Assoc.*,
Case No. 05-1483, 2006 U.S. Dist. LEXIS 42911 (D.D.C. Jun. 26, 2006).............................23

**Statutes**

D.C. Code § 2-1403.16 .............................................................................14

D.C. Code § 12-301(8).............................................................................19

D.C. Human Rights Act, D.C. Code § 2-1401.01, *et seq*. .........................6, 14

**Other Authorities**

Fed. R. Civ. P. 8 ....................................................................................6, 19

Fed. R. Civ. P. 12(b)(6)........................................................................1, 5, 25

Defendant Congressional Black Caucus Foundation ("CBCF") moves the Court for an order dismissing Counts II, III, and IV with prejudice under Rule 12(b)(6) because Plaintiff Jane Doe ("Plaintiff") has failed to state any claims against CBCF upon which relief can be granted.

## I.   <u>INTRODUCTION</u>

CBCF is a non-profit organization dedicated to enhancing opportunities for young people of color in Washington, D.C.  To that end, CBCF maintains a robust internship program that allows young people of color to work in Congressional offices, educates them about legislative and political processes, and affords them the opportunity to develop valuable relationships and connections as they are beginning their careers.  Former CBCF interns regularly work on Capitol Hill in staff and elected positions, attend law school, and obtain corporate positions that might not otherwise have been available to them.

Plaintiff Jane Doe participated in CBCF's internship program in 2015.  To CBCF's great shock, Plaintiff reported that she had been sexually assaulted by the internship coordinator. CBCF's response to Plaintiff's 2015 report is not at issue in this litigation – nor could it be as CBCF took immediate action in response to her report and launched a full investigation.  CBCF's CEO and other senior staff met with Plaintiff and her mother, interviewed the internship coordinator, and cooperated fully with the police.  The internship coordinator vehemently denied Plaintiff's allegations of assault.  Nevertheless, CBCF terminated his employment because he admitted to having alcohol with Plaintiff, who was then under age 21.  No criminal charges were ever filed against the former internship coordinator.  Given the appropriateness of CBCF's response, Plaintiff never filed or seriously threatened any claims against CBCF.

In 2017, Plaintiff obtained a staff position with the Office of U.S. Representative Sheila Jackson Lee – precisely the outcome one would expect from Plaintiff participating in CBCF's

internship program. When CBCF's CEO learned of Plaintiff's new position in November 2017, she texted Rep. Jackson Lee that she wanted to discuss the Congresswoman's new hire. The CEO's intent was to express her hope that Plaintiff would have a rewarding experience working for the Congresswoman. According to the Complaint, Plaintiff apparently intercepted the CEO's text. It is unclear if Rep. Jackson Lee ever saw the text, but CBCF's CEO and the Congresswoman never discussed Plaintiff. There are no facts alleged in the Complaint that contradict this account.

Around four months later, in early March 2018, according to the Complaint, Plaintiff began telling her co-workers in the Office of Rep. Jackson Lee that she was contemplating legal claims against CBCF. There are no allegations in the Complaint that anyone at CBCF knew Plaintiff was making these statements, and Plaintiff never filed or even articulated any such claims.

In late March 2018, Plaintiff was terminated from the Congresswoman's Office and was allegedly told it was for budgetary reasons. CBCF had no advance knowledge of this termination, never suggested or encouraged this termination, and has no idea why Plaintiff was terminated. There is not a single factual allegation in the Complaint to suggest otherwise.

Nonetheless, Plaintiff has sued CBCF in this employment dispute between her and her former employer. The reason to bring CBCF into this case is obvious: it is a relatively small story that one member of Congress is in a dispute with a terminated employee; but include the words "Congressional Black Caucus" in the case caption, and media attention grows exponentially. Of course, media attention of this nature is intended for one purpose – to increase the "value" of this case and the pressure to settle, never mind that this frivolous filing against CBCF needlessly sullies the reputation of an internship program that has helped launch the careers of hundreds of young people of color.

As explained below, there is no viable legal theory by which CBCF can be held responsible for the alleged actions of Rep. Jackson Lee's Congressional Office – CBCF is not a joint employer with the Congressional Office, and the Congresswoman does not act as CBCF's agent when she makes staffing decisions in her Congressional Office, particularly when there are no facts to suggest any input or knowledge on CBCF's part. Plaintiff also has not alleged any facts to support a retaliation claim against CBCF – the only *fact* in the Complaint is one innocuous text sent four months before Plaintiff told her Congressional co-workers that she was contemplating claims against CBCF and her subsequent termination. Everything else in the Complaint involving CBCF and Plaintiff's termination is pure speculation with no supporting factual allegations. Finally, Plaintiff's retaliation claim is time-barred by the applicable statute of limitations. For all of these same reasons, Plaintiff's tort claims fail as well.

Accordingly, CBCF asks the Court to grant this motion and dismiss CBCF from this action with prejudice.

## II.      STATEMENT OF FACTS

The following are the relevant facts alleged by Plaintiff in her Complaint. While CBCF takes issue with Plaintiff's rendition of the facts, they are accepted as true for the purposes of this motion only, subject to the relevant standard of review summarized below.

1.      Plaintiff was employed by CBCF as an intern starting in August 2015. (ECF Dkt. # 3 – Complaint ("Compl."), ¶ 8.)

2.      The internship program assigns students to work in Congressional offices. (*Id.*)

3.      Plaintiff was assigned to the Office of Representative Terri Sewell. (*Id.*)

4.      On or about October 30, 2015, Plaintiff reported to Rep. Sewell that she had been assaulted by CBCF's internship program coordinator. (*Id.* at ¶ 27.)

5.      During the first week of November 2015, Plaintiff met with representatives of CBCF regarding this report.  (*Id*. at ¶ 28.)

6.      CBCF told Plaintiff that it was placing the internship coordinator on leave immediately.  (*Id*.)[1]

7.      One year later, in October 2016, through her former attorney, Plaintiff notified CBCF that she intended to pursue legal action against CBCF, but she did not file a lawsuit.  (*Id*. at ¶ 30.)

8.      At the time, Representative Sheila Jackson Lee was the Vice Chair of CBCF's Board of Directors.  (*Id*. at ¶ 31.)

9.      In April 2017, Rep. Jackson Lee became the Chair of CBCF's Board of Directors. (*Id*. at ¶ 32.)

10.      In late 2017, Plaintiff accepted a job with the Office of Rep. Jackson Lee.  (*Id*. at ¶ 36.)

11.      Shortly after beginning her new job, Plaintiff learned that CBCF's former internship coordinator had expressed interest in a job with Rep. Jackson Lee.  (*Id*. at ¶ 37.)

12.      Plaintiff disclosed to Rep. Jackson Lee's Chief of Staff that she had a "prior situation" with CBCF's former internship coordinator and that she could not work with him.  (*Id*. at ¶ 38.)

13.      Rep. Jackson Lee's office did not hire the former CBCF internship coordinator. (*Id*.)

14.      During Plaintiff's tenure in Rep. Jackson Lee's office, Rep. Jackson Lee allegedly instructed Plaintiff to perform work for CBCF.  (*Id*. at ¶ 42.)

---

[1] The internship coordinator was later terminated by CBCF.

15.     "Upon information and belief," Plaintiff claims that CBCF was aware that Rep. Jackson Lee allegedly used her Congressional staff to perform work on behalf of CBCF.  (*Id.* at ¶ 43.)

16.     In November 2017, while handling Rep. Jackson Lee's cell phone, Plaintiff viewed a text message sent to Rep. Jackson Lee by A. Shuanise Washington, who was then CBCF's Chief Executive Officer.  (*Id.* at ¶ 45.)

17.     According to Plaintiff, the text message read "something to the effect of 'I just received a notification that you [Representative Jackson Lee] have a new staffer, [Jane Doe's name].  Call me, I have background on her.'"  (*Id.*)

18.     Four months later, on or about March 9, 2018, Plaintiff told Rep. Jackson Lee's Chief of Staff that she had learned more about her case involving CBCF and the former internship coordinator and that she planned to move forward with legal action against CBCF.  (*Id.* at ¶ 53.)

19.     Plaintiff further told the Chief of Staff that she wished to speak to Rep. Jackson Lee about the issue, (*id.*), but no meeting ever occurred (*id.* at ¶ 54).

20.     On March 29, 2018, Plaintiff was terminated by the Office of Rep. Jackson Lee, purportedly for budgetary reasons.  (*Id.* at ¶ 57.)

## III.     STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly,* 550 U.S.

at 555.  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*.  The "threshold requirement" of Rule 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id*. at 557 (*quoting* Fed. R. Civ. P. 8(a)(2)).

### IV.    <u>LEGAL ARGUMENT</u>

#### A.    **Plaintiff Has Not Stated a Claim of Retaliation Against CBCF Under the D.C. Human Rights Act**

Generally, to state a claim of retaliation under the DCHRA, a plaintiff must allege facts tending to show: "(1) that [s]he opposed a practice made unlawful by [the anti-discrimination law]; (2) that the employer took a materially adverse action against [her]; and (3) that the employer took the action 'because' the employee opposed the practice."  *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).[2]  "To survive the [a] motion to dismiss, [a] plaintiff[']s] complaint must 'contain sufficient factual matter, accepted as true,' to plausibly establish those three elements."  *Howard R.L. Cook & Tommy Shaw Found. for Black Empls. of the Lib. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The required "factual matter" is missing from Plaintiff's retaliation claim against CBCF. Rather, Plaintiff relies on speculation and unsupported conclusions in her attempt to state a claim. In Count II of her Complaint, Plaintiff alleges – in conclusory fashion and without any factual foundation – that CBCF and the Office of Rep. Jackson Lee "conspired" to retaliate against Plaintiff "because she threatened to file a lawsuit against CBCF."  (Compl., ¶ 74.)  Even though

---

[2] Because "[t]he elements of a prima facie case for a DCHRA retaliation claim are the same as those under Title VII," *Martin v. District of Columbia*, 78 F. Supp. 3d 279, 315 (D.D.C. 2015), in the following sections, CBCF does not distinguish between cases brought under Title VII or the DCHRA.

she has not pleaded any facts to show a "conspiracy," Plaintiff goes on to theorize that CBCF is liable for retaliation against her because:

(1)   Rep. Jackson Lee, the Chair of CBCF's Board of Directors, terminated Plaintiff's employment allegedly because she had learned Plaintiff intended to sue CBCF (*id.* at ¶ 76); and

(2)   CBCF's CEO retaliated against Plaintiff by allegedly telling Rep. Jackson Lee that Plaintiff had asserted legal claims against CBCF and by allegedly encouraging Rep. Jackson Lee to fire Plaintiff after Plaintiff stated her intention to pursue a lawsuit against CBCF, (*id.* at ¶ 75).

The Complaint does not contain a single factual allegation to support these conclusory assertions.  As explained below, Plaintiff's retaliation claim against CBCF should be dismissed because she has not alleged facts showing that CBCF was legally responsible for her termination from the Office of Rep. Jackson Lee, that she suffered a materially adverse action at the hands of CBCF, or that there was a causal connection between her pursuit of claims against CBCF and any adverse act by CBCF.  Moreover, based on the allegations in her Complaint, Plaintiff's retaliation claim against CBCF is barred by the applicable statute of limitations.

> ### 1.   *Plaintiff has not pleaded facts showing that CBCF was responsible for the actions of the Office of Rep. Sheila Jackson Lee.*

Although not clearly articulated in her Complaint, Plaintiff appears to be claiming that CBCF is liable for the allegedly retaliatory acts of the Office of Rep. Jackson Lee by virtue of Rep. Jackson Lee's role as the Chair of CBCF's Board of Directors.  There is no decisional authority for the proposition that simply sitting on the Board of Directors of a non-profit renders the non-profit liable for every action taken by the Board member in her other business affairs.

Put in more legalistic terms, Plaintiff's theory of liability against CBCF suffers from a fatal legal flaw because (1) Rep. Jackson Lee's Congressional Office is not a joint employer with CBCF

and (2) Rep. Jackson Lee is not an agent of CBCF with regard to her decisions impacting the staff of her Congressional Office.

>    i.    *The Office of Rep. Sheila Jackson Lee and CBCF are not joint employers.*

Plaintiff has not pleaded facts in the Complaint that, if proven true, would establish that CBCF and the Office of Rep. Jackson Lee are joint employers such that CBCF could be liable under the DCHRA for the employment actions of the Office of Rep. Jackson Lee.

Under the DCHRA, the joint employment inquiry is "scrutinized under the tests espoused in *Spirides v. Reinhardt*, 613 F.2d 826, 831-32 (D.C. Cir.1979), and *NLRB v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1123 (3d Cir.1982)." *Miles v. Howard Univ.*, 83 F. Supp. 3d 105, 113 (D.D.C. 2015).  Under the *Browning-Ferris* test, an entity that is not nominally the plaintiff's employer may be considered the plaintiff's joint employer "if it 'retained for itself sufficient control of the terms and conditions' of her employment."  *Arenivar v. Manganaro Midatlantic, LLC*, 317 F. Supp. 3d 362, 369 (D.D.C. 2018) (quoting *Redd v. Summers*, 232 F.3d 933, 938 (D.C. Cir. 2000)). The factors for the Court to consider under the *Browning-Ferris* test include:

> '[(1)] the alleged employer's authority to hire and fire the relevant employees; [(2)] the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; [(3)] the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and [(4)] the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.'

*Miles*, 83 F. Supp. 3d at 117 (D.D.C. 2015) (quoting *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012)).[3]

---

[3] Although courts have also sometimes used the 12-factor test enunciated in *Spirides*, over the past decade, a number of decisions have concluded that "the *Browning-Ferris* test is better suited

Plaintiff has not pleaded sufficient facts to show that CBCF was her joint employer with the Office of Rep. Jackson Lee.  She has not alleged that CBCF set the work rules or conditions of employment, had day-to-day involvement in the supervision of the employees, or controlled the employee records for the Office of Rep. Jackson Lee – nor can she plausibly do so.  And while she speculates that CBCF exerted retaliatory influence to cause her termination, Plaintiff has not alleged that CBCF had any actual authority over or any actual right to control the hiring and firing decisions in the Office of Rep. Jackson Lee, which are hallmarks of a joint employer arrangement.

Beyond the fact that Rep. Jackson Lee was the Chair of CBCF's Board of Directors, the only "factual matter" in the Complaint tending to show any connection between CBCF and the Office of Rep. Jackson Lee are Plaintiff's allegations that: (1) Rep. Jackson Lee assigned Plaintiff to complete tasks related to CBCF events and to respond to CBCF-related e-mails sent to Rep. Jackson Lee; and (2) CBCF was, "upon information and belief," aware that Rep. Jackson Lee "routinely" used her Congressional staff to perform work for CBCF.  (Compl., ¶¶ 42-43).  Plaintiff

---

than the *Spirides* test to resolve claims of joint employment," while noting that the result is likely to be the same under either test "since the *Browning-Ferris* test 'is not terribly distinct from the primary consideration in the *Spirides* test.'" *Clayton v. District of Columbia*, 117 F. Supp. 3d 68, 83 (D.D.C. 2015); *see also, e.g.*, *Coles v. Harvey,* 471 F.Supp.2d 46, 50 (D.D.C.2007) (citing and interpreting *Redd v. Summers,* 232 F.3d 933 (D.C. Cir. 2000), to reach same result); *Mack v. Aspen of DC, Inc.*, 248 F. Supp. 3d 215, 218-19 (D.D.C. 2017) (same); *Miles v. Howard Univ.*, Case No. 12-3782, 013 U.S. Dist. LEXIS 155236, at **7-8 (D.D.C. Oct. 30, 2013) (same).

In addition to evaluating control, the *Spirides* test includes 11 other factors:  (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the putative employer furnishes the equipment used and the place of work; (4) the length of time during which the individual worked; (5) the method of payment; (6) the manner in which the work relationship terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the putative employer; (9) whether the worker accumulates retirement benefits; (10) whether the putative employer pays social security taxes; and (11) the intention of the parties.  *Konah v. Dist. of Columbia*, 815 F. Supp. 2d 61, 70 (D.D.C. 2011).

implies that this alleged mixing of Congressional and CBCF business was improper, but she does not allege that CBCF had *control* over the employment-related affairs of the Office of Rep. Jackson Lee.

Plaintiff has not pleaded facts in her Complaint plausibly showing that CBCF and the Office or Rep. Jackson Lee "share[d] or co-determine[d] [the] matters governing essential terms and conditions of [her] employment." *NLRB v. Browning-Ferris Indus. of Pennsylvania*, 691 F.2d 1117, 1123 (3d Cir. 1982). Accordingly, Plaintiff has not shown and will not be able to show that CBCF was her joint employer with the Office of Rep. Jackson Lee such that CBCF is liable for the allegedly retaliatory acts of the Office of Rep. Jackson Lee.

### ii.   *Rep. Jackson Lee is not an authorized agent of CBCF.*

For essentially the same reasons, Plaintiff has not shown that CBCF could be liable for the actions of Rep. Jackson Lee based on an agency/*respondeat superior* theory. The black letter principles of agency law require, for there to be an agent-principal relationship, there must be: (1) consent by the parties to establish a principal-agent relationship; and (2) "evidence that the activities of the agent are subject to the principal's control." *Henderson v. Charles E. Smith Mgmt., Inc*., 567 A.2d 59 (D.C. 1989). Plaintiff has not pleaded any facts to show either of these required elements to establish an agency relationship between Rep. Jackson Lee (the supposed agent) and CBCF (the supposed principal as it relates to Plaintiff's termination).

The D.C. Court of Appeals has held that the following factors are to be considered in determining whether an agency relationship exists: "'(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer.'" *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000) (quoting *LeGrand v. Ins. Co. of North Am.*, 241 A.2d

734, 735 (D.C.1968)).  "Of these factors, the determinative one is usually 'whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.'"  *Id*. (quoting *LeGrand*, 241 A.2d at 735).

There are no facts alleged in the Complaint that show CBCF had any control over Rep. Jackson Lee's conduct with respect to the staff of her Congressional office.  Nor are there any factual allegations in the Complaint suggesting that Rep. Jackson Lee was acting in her capacity as Chair of the CBCF Board of Directors in making the decision to terminate Plaintiff's employment from her Congressional office – and for good reason: no one acting in this capacity as a CBCF Board member would ever have authority to fire a Congressional staffer.  To suggest that CBCF, a non-profit organization, had the "right to control and direct" the actions of a Member of Congress with respect to the staffing of the Member's Congressional office is an absurd proposition.

As a result, Plaintiff has not pleaded factual allegations giving rise to a legal basis for holding CBCF liable for the actions of the Office of Rep. Jackson Lee.  Accordingly, to the extent that Plaintiff's DCHRA retaliation claim rests on the acts of the Office of Rep. Jackson Lee, her claim must be dismissed as to CBCF.

> iii.  *Plaintiff did not engage in any protected activity while employed in the Office of Rep. Jackson Lee.*

Finally, even if CBCF could somehow be held liable for the alleged actions of the Office of Rep. Jackson Lee, which CBCF does not concede, Plaintiff's retaliation claim still fails. Plaintiff claims that she was terminated in retaliation for her alleged March 2018 comments to Rep. Jackson Lee's Chief of Staff about suing CBCF.  Plaintiff's alleged comments in March 2018 cannot, however, constitute a protected activity under the DCHRA.

To advance a claim of retaliation, "an employee seeking the protection of the opposition clause [must] demonstrate a good faith, reasonable belief that the challenged practice violates" the DCHRA. *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (quoting *Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981)).  By March 2018, any potential claims by Plaintiff against CBCF under the DCHRA were long time-barred under the DCHRA's one-year statute of limitations.  The DCHRA "is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur.  Unlitigated bygones are bygones." *Duncan v. Mgr., Dep't of Safety*, 397 F.3d 1300, 1308 (10th Cir. 2005).  Given the long ago expiration of the statute of limitations, Plaintiff cannot have held a reasonable, good faith belief that she was engaged in a protected activity under the DCHRA when she allegedly told her colleague in March 2018 that she intended to pursue a case against CBCF based on the events that allegedly occurred in 2015.

Even if Plaintiff were terminated for making these comments to her colleague in March 2018, and even if CBCF could be liable for the decisions of a Congressional Office, Plaintiff's March 2018 disclosures to the Office of Rep. Jackson Lee are not protected activity under the DCHRA.  Plaintiff's DCHRA claim against CBCF thus should be dismissed for this reason as well.

### 2. *Plaintiff's retaliation claim directly against CBCF is untimely and lacks adequate supporting factual allegations.*

Plaintiff's second speculative theory of liability against CBCF is that CBCF's CEO allegedly informed Rep. Jackson Lee that Plaintiff had asserted legal claims against CBCF and supposedly "encouraged" Rep. Jackson Lee to fire Plaintiff.  This theory fails to state an actionable retaliation claim against CBCF for three independent reasons: (1) it is untimely; (2) Plaintiff has not pleaded sufficient facts to show that CBCF took any materially adverse action against her; and

(3) Plaintiff has not pleaded sufficient facts to show a causal connection between her protected activity and the alleged materially adverse action.

i.    *An evaluation of Plaintiff's retaliation claim against CBCF must consider only the allegations concerning CBCF's actions.*

In a claim of post-employment retaliation, it is not the actions of a subsequent employer (*e.g.*, firing or not hiring the plaintiff) that constitute the adverse action giving rise to the retaliation claim.  Rather, it is the alleged actions of the defendant/prior employer (*e.g.*, providing negative information to the subsequent employer) that constitute the materially adverse action.  *See EEOC v. L.B. Foster Co.*, 123 F.3d 746, 753-54 (3d Cir. 1997) ("The district court improperly focused on the action of the prospective employer and not L.B. Foster in determining whether the EEOC had presented evidence of an adverse employment action."); *see also Coles v. Deltaville Boatyard, LLC*, Case No. 3:10-cv-491, 2011 U.S. Dist. LEXIS 14304, at *19-20 (E.D. Va. Feb. 14, 2011) (in post-employment retaliation context, because the focus is on prior employer's conduct, plaintiff is not required to plead that "but for" defendant's retaliatory acts plaintiff would not have been fired by subsequent employer).  In other words, whether a former employer's allegedly retaliatory acts achieved the intended effect of harming the plaintiff's employment prospects is a question of damages, not liability.  *See id*. at *20, n.5 (collecting cases).

Accordingly, in evaluating whether Plaintiff has adequately stated a retaliation claim against CBCF, the alleged actions of the Office of Rep. Jackson Lee are wholly irrelevant.  What matters is whether Plaintiff has pleaded sufficient facts that, if taken as true, would allow the Court to conclude that *CBCF* engaged in materially adverse action against Plaintiff and that *CBCF's* alleged actions were causally connected to Plaintiff's alleged protected activity or activities.  As discussed in more detail below, Plaintiff has failed to adequately plead such facts.

ii.    *Plaintiff's retaliation claim against CBCF is untimely.*

"Under the D.C. Human Rights Act, an employee must file a private cause of action against an employer 'in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof.'" *Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 77 (D.D.C. 2009) (citing D.C. Code § 2-1403.16).   Plaintiff's retaliation claim against CBCF is untimely because she filed this lawsuit more than one year after the last alleged retaliatory act by CBCF and her alleged simultaneous discovery thereof.

In her Complaint, the last factual allegation concerning conduct by CBCF is the alleged "I have background" text sent by CBCF's CEO to Rep. Jackson Lee in November 2017.  (Compl., ¶ 45.)  Plaintiff "discovered" this text on the day it was sent.  (*Id*.).  Although Plaintiff speculates that CBCF and the Office of Rep. Jackson Lee "conspired" to retaliate against her (*id*. at ¶ 74) and CBCF's CEO "encourag[ed] Rep. Jackson Lee to fire" Plaintiff (*id*. at ¶ 75), at no point in her Complaint does she make any factual allegations about specific conduct by CBCF occurring after November 2017.  This lawsuit was filed on January 11, 2019, more than one year after the last alleged act by CBCF (the November 2017 "I have background" text) and Plaintiff's simultaneous discovery of the text.  Plaintiff's retaliation claim is thus clearly untimely.

The fact that Plaintiff was not separated by the Office of Rep. Jackson Lee until March 2018 does not toll or restart the statute of limitations.  As explained above, the actions of Rep. Jackson Lee's Congressional office cannot be imputed to CBCF because Rep. Jackson Lee is not CBCF's agent or a joint employer with CBCF.  Moreover, Plaintiff's termination by the Office of Rep. Jackson Lee is relevant to her retaliation claim against CBCF only on the question of alleged damages and has no bearing on when her claim against CBCF actually accrued.  *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (holding that statute of limitations begins

to run when discriminatory act occurred, even though "the *effects*" of discriminatory act "did not

occur until later").

Plaintiff's retaliation claim against CBCF under the DCHRA is thus untimely and should

be dismissed.

### iii. <u>Plaintiff has not pleaded facts tending to show that CBCF took any materially adverse action against her.</u>

To state a claim of retaliation against a former employer for providing negative information

to a subsequent or prospective employer, a "plaintiff must allege: (1) the disparaging comments

that were made or how [the defendant] spoke ill of [the plaintiff]; (2) to whom the discriminatory

statements were made; and (3) the position or positions for which plaintiff was denied employment

as a result of the negative" information. *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d

23, 31 (D.D.C. 2001).

In *Niedermeier*, the Court denied leave to amend where the proposed amended complaint

included allegations that plaintiff was warned by an acquaintance to "be wary" about what

defendant's office was saying about her and that she believed that she did not receive a position

due to a negative reference from the defendant's office. *Id*. at 30. The Court found that the

plaintiff's proposed amended complaint failed to state a claim upon which relief could be granted

because she did "not allege that she is aware that [the defendant] or anyone acting on his behalf

ever talked to or communicated in any way with a prospective employer." *Id*. at 31.

Exactly as in *Niedermeier*, Plaintiff here has not pleaded any facts about any allegedly

disparaging comments made by CBCF. All Plaintiff alleges is that, in November 2017, after she

was hired by the Office of Rep. Jackson Lee, CBCF's then-CEO reached out to Rep. Jackson Lee

and offered to provide "background" regarding Plaintiff. From this single alleged text, Plaintiff

invites the Court to conclude that CBCF made disparaging comments about her, revealed her past

pursuit of legal claims against CBCF to the Office of Rep. Jackson Lee, and/or encouraged Rep. Jackson Lee to fire Plaintiff.

While the Court must draw all reasonable inferences in Plaintiff's favor on a motion to dismiss, Plaintiff's theory actually requires the Court to make *two* unsupported inferential leaps to conclude that CBCF took any materially adverse action against Plaintiff.  The Court must first assume that CBCF's CEO actually spoke to Rep. Jackson Lee or someone in Rep. Jackson Lee's office.  The Court must then assume that CBCF's CEO shared negative information about Plaintiff or information about her past pursuit of legal claims against CBCF.

Neither of these assumptions is backed by factual allegations in the Complaint.  There is nothing in the Complaint from which the Court could reasonably infer that the alleged "I have background" text was sent with the intention of disparaging Plaintiff, that CBCF's CEO ever discussed Plaintiff with anyone from the Congressional Office, or that CBCF had anything to do with Plaintiff's termination.  The only other "fact" alleged in the Complaint is that Plaintiff was terminated over four months after the November 2017 text.  The four-month gap between the text and Plaintiff's termination invalidates and cuts against the speculative and fact-free conclusions upon which Plaintiff's claims rely.  Indeed, based on the factual allegations in the Complaint, it is equally plausible (and, in fact, the actual truth) that the "I have background" text was sent with the intention of supporting Plaintiff, not damaging her employment prospects.

Plaintiff's retaliation theory against CBCF requires speculation upon speculation and thus falls far short of the *Iqbal/Twombly* pleading standard.  The Supreme Court requires complaints to be based on "more than a sheer possibility that a defendant has acted unlawfully," but "sheer possibility" is the only basis for Plaintiff's retaliation claim against CBCF.  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  Accordingly, Plaintiff's retaliation claim should be dismissed for this reason as well.

> iv.   *Plaintiff has not pleaded facts tending to show a causal connection between her 2016 pursuit of claims against CBCF and the alleged adverse action by CBCF.*

Plaintiff also has not pleaded any facts from which the Court could infer that there was a causal connection between her October 2016 notification that she intended to pursue legal action against CBCF and the alleged November 2017 "I have background" text message.  Plaintiff simply wants the Court to assume that, because she contemplated legal action against CBCF in the past, CBCF must have contacted the Office of Rep. Jackson Lee for that reason 13 months later.  But, "[t]he fact that one event precedes another does not in itself evidence causation."  *Payne v. Dist. of Columbia*, 722 F.3d 345, 354 (D.C. Cir. 2013).

A causal connection may be pleaded through a variety of means:

> either through direct evidence or by circumstantial evidence, such as temporal proximity between the protected activity and the adverse employment action. Direct evidence is expressions by the decision maker that are evidence of discriminatory or retaliatory intent.  Such evidence must establish a connection between the decision maker's statements and the adverse employment decision.  On the other hand, to rely on temporal proximity to prove causal relation, the temporal proximity must be very close – generally less than three months.

*Lane v. Vasquez*, 961 F. Supp. 2d 55, 67-68 (D.D.C. 2013) (internal quotations marks and citations omitted).  "[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference" of causation. *Buggs v. Powell*, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).  Plaintiff has not alleged any facts in her Complaint that, if proven true, could constitute direct or circumstantial evidence of causation.

Plaintiff has not pleaded any facts that would constitute direct evidence of a causal connection.   All she has pleaded is a facially-neutral text message ("I have background"). Although Plaintiff puts her spin on this text message, claiming that it evinces retaliatory intent on the part of CBCF, it is equally plausible that the text message was sent with the intent of *supporting* Plaintiff, who was a former intern of CBCF.  *Cf. Coles v. Deltaville Boatyard, LLC*, 2011 U.S. Dist. LEXIS 14304, at *18 (E.D. Va. 2011) (retaliatory intent can be reasonably inferred when defendant faxed plaintiff's EEOC charge to subsequent employers, told them to "watch out" for plaintiff, and told them that he intended to prevent plaintiff from working in town again).  Plaintiff cannot even allege that CBCF's CEO spoke with Rep. Jackson Lee about Plaintiff (because they never did).  Plaintiff has not pleaded any statements or actions by CBCF officials that, if proven, could be construed as direct evidence of causation.

Plaintiff has also not pleaded facts that would constitute circumstantial evidence of causation.   There is no temporal proximity between Plaintiff's alleged protected activity (informally pursuing legal claims in October 2016) and the alleged retaliatory conduct (contacting Rep. Jackson Lee in November 2017).  *See McIntrye v. Peters*, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) ("This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone.").  And, Plaintiff has not pleaded facts showing an intervening "pattern of antagonism" or any other events in the interim that might help establish a causal connection.  A lapse of more than one year cannot, without more, support an inference of causation.  *See Payne*, 722 F.3d at 354 ("Once the time between a protected disclosure and a negative employment action has stretched to two-thirds of a year, there is no 'temporal proximity' that supports a causal connection between the two, nothing else appearing.").  Plaintiff thus has not pleaded sufficient facts that, if proven, would support the "causal connection" prong of her *prima facie* case of

retaliation.  For this independent reason as well, Plaintiff's retaliation claims against CBCF should be dismissed.

In sum, Plaintiff's allegations in her Complaint fall far short of the level of "plausibility" required to state a claim of retaliation against CBCF.  Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678-79, as is the case here.  Accordingly, CBCF respectfully requests that the Court dismiss Plaintiff's retaliation claim against CBCF with prejudice.

### B.     Plaintiff's Remaining Tort Claims Also Fail As a Matter of Law

Plaintiff's common law tort claims in Count III – Tortious Interference with Contractual Rights, Business Relationship, and Prospective Economic Advantage ("Tortious Interference") and Count IV – Intentional Infliction of Emotional Distress ("IIED") also fail as a matter of law and should be dismissed.  Plaintiff's claims are untimely and she has not pleaded adequate facts to plausibly state a claim for relief on either theory.

### 1.     *Plaintiff's common law claims are subject to a one-year statute of limitations because they are inextricably intertwined with her DCHRA claim.*

Plaintiff's claims in Counts III and IV are subject to a one-year statute of limitations because those claims are inextricably intertwined with her retaliation claim under the DCHRA. Generally speaking, "[t]he D.C. Code does not specify a statute of limitations period for intentional infliction of emotional distress or tortious interference with business relationships, thus both claims are subject to a three-year statute of limitations."  *Nyambal v. AlliedBarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 314 (D.D.C. 2016) (citing D.C. Code § 12-301(8)).  But, "when such causes of action are 'intertwined' with claims subject to a specified limitations period, the defined limitation period applies to all claims."  *Id.*

Here, Plaintiff's tortious interference and IIED claims are inextricably intertwined with her retaliation claim under the DCHRA because they arise out of the exact same factual allegations as her DCHRA retaliation claim.  There are no factual allegations supporting her tortious interference and IIED claims that are independent of her DCHRA retaliation claim.  Plaintiff's common law claims are thus subject to the DCHRA's one-year statute of limitations.  *See Munoz v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 590 F. Supp. 2d 21, 26-27 (D.D.C. 2008) (applying one-year statute of limitations to IIED claim based on "exact same conduct that forms the basis of [plaintiff's] DCHRA claims"); *Nyambal*, 153 F. Supp. 3d at 315 (applying one-year defamation statute of limitations to IIED and tortious interference claims because "every incident that allegedly interfered with [plaintiff's] business relationships and caused him emotional distress also allegedly defamed him").

As explained above with respect to her DCHRA retaliation claim, the last alleged act by CBCF pleaded in the Complaint occurred outside of the one-year statute of limitations – the November 2017 "I have background" text from CBCF's CEO.  Plaintiff has not pleaded any facts in her Complaint occurring after November 2017 for which CBCF is responsible.  As a result, the statute of limitations bars Plaintiff's common law claims against CBCF.

### 2. *Plaintiff's common law claims should be dismissed because she has not pleaded adequate factual matter to support her claims.*

Even if Plaintiff's common law claims were not barred by the statute of limitations, Plaintiff's common law claims still fail because she has not pleaded sufficient facts to plausibly establish a right to relief on those claims.

  i.  *Plaintiff has not pleaded facts sufficient to plausibly establish a tortious interference claim.*

For her tortious interference claim, Plaintiff must plead facts plausibly establishing: (1) the existence of a valid contractual or other business relationship; (2) CBCF's knowledge of the relationship; (3) intentional interference with that relationship by CBCF; and (4) resulting damages. *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038 (D.C. 2015). There must be a "substantial and direct causal link" between the alleged interference and the damages allegedly suffered. *Id.* Plaintiff's tortious interference claim fails because she has not pleaded sufficient facts to support the third or fourth elements of her claim.

Plaintiff has not pleaded sufficient facts that, if proven true, would show that CBCF intentionally interfered with her employment with the Office of Rep. Jackson Lee.[4] As explained above with respect to Plaintiff's DCHRA retaliation claim, all Plaintiff has pleaded is that CBCF's then-CEO sent a text message to Rep. Jackson Lee in November 2017 offering to provide "background" regarding Plaintiff. There are no facts pleaded in Plaintiff's Complaint that, if proven true, would show that CBCF actually shared any "background" with Rep. Jackson Lee, that such "background" information was negative, or that the information was proffered with the intent to disrupt Plaintiff's employment with the Office of Rep. Jackson Lee. *See Little v. Dist. of Columbia Water & Sewer Auth.*, 91 A.3d 1020, 1030 (D.C. 2014) (affirming summary judgment on tortious interference claim where plaintiff lacked evidence that defendant communicated negative information to his employer); *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 115-16 (D.D.C.

---

[4] "[B]ecause it is axiomatic that an employer cannot interfere with its own contract," *McManus v. MCI Communications Corporation*, 748 A.2d 949, 958 (D.C. 2000), the actions of Rep. Jackson Lee and/or her Congressional Office cannot constitute "interference," and the Court need only examine the alleged actions of CBCF in evaluating whether Plaintiff has stated a viable claim.

2012) (dismissing tortious interference claim where complaint did not contain allegations that defendant had contact with decision-makers).

Plaintiff also has not pleaded sufficient facts to plausibly establish a causal relationship between any act by CBCF and her termination by the Office of Rep. Jackson Lee.  In other words, she has not pleaded facts from which it could be inferred that the "I have background" text from November 2017 was the cause of her termination in late March 2018.  Even accepting as true Plaintiff's speculation that the Office of Rep. Jackson Lee fired Plaintiff because Plaintiff intended to pursue legal action against CBCF, Plaintiff has not pleaded facts showing that CBCF's "I have background" text was the catalyst that set in motion her termination.  In fact, Plaintiff's timeline of alleged events makes clear that it was not the November 2017 "I have background" text that led to her termination in March 2018; rather, in Plaintiff's Complaint, Plaintiff makes it clear that she believes her own disclosures in March 2018 to the Office of Rep. Jackson Lee precipitated her termination later that month.  In sum, Plaintiff has not pleaded any factual matter from which the Court could reasonably conclude that her "damages" (being terminated by the Office of Rep. Jackson Lee) were a result of any action by CBCF.

As currently pleaded, Plaintiff's tortious interference theory requires the Court to make multiple assumptions, not supported by factual allegations, to reach the conclusion that CBCF intentionally interfered with her employment with the Office of Rep. Jackson Lee and that CBCF's actions were the cause of her termination.  But, nothing in her Complaint "supports more than the rankest speculation that [CBCF] or anyone acting on its behalf harbored any ill motive or intent to disrupt" Plaintiff's employment with the Office of Rep. Jackson Lee.  *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995).  Accordingly, Plaintiff's tortious interference claim in Count III of her Complaint should be dismissed.

ii.   *Plaintiff has not pleaded facts sufficient to plausibly establish an
intentional infliction of emotional distress claim.*

To establish an intentional infliction of emotional distress ("IIED") claim, a plaintiff must

show: "(1) extreme and outrageous conduct on the part of the defendant which (2) either

intentionally or recklessly (3) caused the plaintiff severe emotional distress."   *Beyene v. Hilton*

*Hotels Corp.*, 815 F. Supp. 2d 235, 248-49 (D.D.C. 2011) (quoting *Halcomb v. Woods*, 610 F.

Supp. 2d 77, 80 (D.D.C. 2009)).

"To establish the required degree of outrageousness, the plaintiff must allege conduct so

outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized community."   *Kerrigan v.*

*Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997).   This "very demanding standard"

is "infrequently met," "especially in the employment context, [where] the standard is exacting."

*Evans v. District of Columbia*, 391 F. Supp. 2d 160, 170 (D.D.C. 2005); *Dale v. Thomason*, 962

F. Supp. 181, 184 (D.D.C. 1997).   Indeed, "generally, employer-employee conflicts do not rise to

the level of outrageous conduct" necessary for establishing a claim.   *Duncan v. Children's Nat'l*

*Med. Ctr.*, 702 A.2d 207, 211-12 (D.C. 1997) (no IIED where defendant forced pregnant plaintiff

to choose between continuing to work in position requiring exposure to radiation or losing her

job).

Plaintiff's factual allegations in this case cannot meet the "very demanding" standard of

outrageous conduct to state an IIED claim.   All she has alleged is that CBCF's CEO sent a text

message to her employer offering to provide "background" on Plaintiff.   This alleged post-

employment conduct is hardly the type of "extreme and outrageous" conduct for which relief is

available under an IIED theory.   *See Williams v. Fed. Nat'l Mortg. Assoc.*, Case No. 05-1483, 2006

U.S. Dist. LEXIS 42911, at *32 (D.D.C. Jun. 26, 2006) (no IIED where, following plaintiff's

termination, "defendants refused to contract with [plaintiff] because of her race and engaged in a campaign to prevent others from doing business with her").

Even accepting as true Plaintiff's factually unsupported speculation that CBCF shared information about Plaintiff's past pursuit of legal claims against CBCF with the Office of Rep. Jackson Lee, Plaintiff's IIED claim still fails as a matter of law.  In *Kerrigan v. Britches of Georgetowne, Inc.*, the D.C. Court of Appeals held that the plaintiff failed to state an IIED claim in his Complaint even though defendant allegedly "targeted [plaintiff] for a sexual harassment investigation, manufactured evidence against him . . . to establish a false claim of sexual harassment, leaked information . . . to other employees, and unjustifiably demoted him . . . to promote a woman to his position."  705 A.2d at 628.  In *Grimes v. District of Columbia*, the D.C. Court of Appeals similarly upheld the dismissal of the plaintiff's IIED claim where the plaintiff had alleged his employer "targeted him for investigation, manufactured false evidence, and leaked that evidence to others."  89 A.3d 107, 114 (D.C. 2014).  Likewise, in *Williams v. District of Columbia*, the plaintiff claimed that he was terminated – purportedly for budgetary reasons – after reporting alleged misconduct by then-Mayor Adrian Fenty.  9 A.3d 484, 487-88 (D.C. 2010).  The plaintiff in *Williams* further alleged that after he testified about his termination and the Mayor's purported misconduct, city employees retaliated against him by spreading false and defamatory statements about him, including that he had been terminated for embezzlement.  *Id*. at 488.  Nonetheless, the D.C. Court of Appeals affirmed the dismissal of the plaintiff's IIED claim, citing its "exacting" standard of "proof required to sustain such claims in an employment context."  *Id*. at 494.

In this case, Plaintiff's IIED theory does not meet the "exacting" standard required to plausibly state a claim for relief.  In *Kerrigan*, *Grimes*, and *Williams*, the D.C. Court of Appeals

rejected the plaintiffs' IIED claims even though those plaintiffs alleged the publication of false statements and other blatantly discriminatory acts.  By contrast, in this case, Plaintiff only speculates that CBCF privately shared *truthful* information about her past pursuit of legal action against CBCF.  Her claim falls even further short of the mark than the rejected IIED claims advanced by the plaintiffs in *Kerrigan*, *Grimes*, and *Williams*.

Accordingly, CBCF respectfully requests that Plaintiff's IIED claim be dismissed for failure to state a claim.

## V.      CONCLUSION

WHEREFORE, CBCF respectfully requests this Court enter an order dismissing Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure state any claims upon which relief may be granted, and for such other and further relief as the Court deems just and proper.

Dated: March 15, 2019                                    Respectfully submitted,


  */s/ John M. Remy*
John M. Remy (D.C. Bar No. 461244)
Tanzeela Ahmad (D.C. Bar No. 1048781)
**JACKSON LEWIS, P.C.**
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Tel.: (703) 483-8300
Fax: (703) 483-8301
John.Remy@jacksonlewis.com
Tanzeela.Ahmad@jacksonlewis.com

***Attorneys for Congressional Black Caucus Foundation***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of March, 2019, a true and accurate copy of the foregoing was filed electronically via the Court's CM/ECF electronic filing system which will send a notice of electronic filing to the following counsel of record:

Lynne Ann Bernabei, Esq.
Alan Robert Kabat, Esq.
Michael Paul Ellement, Esq.
BERNABEI & KABAT, PLLC
1400 16th Street NW Suite 500
Washington, DC 20036
Bernabei@bernabeipllc.com
Kabat@bernabeipllc.com
Ellement@bernabeipllc.com

*Attorneys for Plaintiff*

*/s/ John M. Remy*
John M. Remy (D.C. Bar No. 461244)
**JACKSON LEWIS, P.C.**
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Tel.: (703) 483-8300
Fax: (703) 483-8301
John.Remy@jacksonlewis.com

*Attorneys for Congressional Black Caucus Foundation*